# GEORGE A. OSGOOD v. WILLIAM DE GROOT.

*Bankruptcy—Insurance Companies—R. S.* 469, §§ 68, 70, 72, 74.—*Set-offs—
what allowable as.*

The provisions of the statute in respect to receivers of insolvent insurance companies, being vested with all the powers and authority conferred by law upon trustees of insolvent debtors (2 R. S. p. 469, §§ 68, 70, 72, 74), are the same as the English Bankrupt act. Consequently the receiver in adjusting accounts between the insured and the insolvent company must allow as set-offs mutual debts, and all credits and transactions ex contractu, which credit or contract must ultimately terminate in a debt, although not liquidated or payable at the time of the bankruptcy.

ON the 6th of March, 1864, the Columbian Insurance Company, a corporation organized under the laws of the State of New York, issued to the Defendant its policy, insuring him $43,000 on the bark Heiress, for one year from date. The policy contained the following clause : "And in case of loss, such loss shall be paid in sixty days after proof and adjustment thereof; the amount of the premium note, if unpaid, and all sums due to the company from the insured, when such loss becomes due, being first deducted; and all sums coming due being first paid or secured to, the satisfaction of said company, they discounting interest for anticipating payment." On the 3d of March, 1865, the company, by an endorsement on the policy, continued the insurance for one year, upon the same terms, valuation, and printed conditions, as by the original policy. For the premium upon this renewal, $3,010, the Defendant gave to the company the note on which this action is brought, payable in twelve months after the 5th of March, 1865. On the 22d of November, 1865, the Defendant sustained a general average loss, by perils within the policy, to the amount of $2,825.65. On the 23d of January, 1866, the company having become insolvent, the Plaintiff was appointed receiver of its property under the statutory proceedings provided in such cases, and qualified as such receiver on the 24th of January, 1866. On the 6th of February, 1866, the receivers published

notice of their appointment, and requiring all parties indebted to the company to render an account of their debts, at the receivers' office, on or before the 20th of March, 1866, and all creditors to present their demands at the same time and place. On the day designated in the notice, the Defendant presented to the receivers proof of his claim under the policy, which had already been adjusted, ascertained, and liquidated by a professional adjuster at the sum above named, and the receivers acquiesced in and conceded the validity and amount of the claim, and the liability of the company to pay the same. On the 21st of March, 1866, this action was commenced by the receivers upon the premium note, and the Defendant, by his answer, claims the right to set off, or have allowed against it, the general average loss under the policy.

Upon the trial at the circuit, it was stipulated that the question of the Defendant's right to have the demand set off or credited should be determined upon the merits, without regard to the form in which it was presented, so that if it should be decided that they would be entitled to the set-off upon petition or summary application to the Court for direction to the receivers, they should have the like right upon the trial, without the formality of a petition or summary application.

The judge at the circuit allowed the Defendant's claim to a set-off, and ruled that the receivers were entitled to recover the balance only after such allowances.

The General Term of the First District affirmed this decision, and the receivers now appeal to this Court.

*David Dudley Field* for Appellant.

Mr. *Choate* for Defendant.

HUNT, J.—It is substantially conceded by both parties that the set-off claimed cannot be allowed under the general provisions of law on that subject. The question is to be decided upon the provisions of law peculiar to insolvent corporations. The receivers of insolvent insurance companies are vested by statute with all the powers and authority conferred by law upon the trustees

of insolvent debtors (2 R. S. 469, §§ 68, 70, 72, 74). The statute regulating the duties of such trustees provides, among other things, as follows : "Where mutual credit has been given by any debtor and any other person, or mutual debts have subsisted between such debtor and any other person, the trustees may set off such credits or debts, and pay the proportion or receive the balance due. But no set-off shall be allowed of any claim or debt, which would not have been entitled to a dividend, as herein-before directed."

The Respondent claims the right to make this set-off, on the ground that the present is a case of mutual credits, both by the general principles of law, and by the peculiar provision of the contract. The latter suggestion is based upon that portion of the policy which states that "in case of loss, such loss shall be paid in sixty days after proof and adjustment thereof : the amount of the premium note, if unpaid, and all sums due to the company from the insured, when such loss becomes due, being first deducted ; and all sums coming due being first paid or secured to the satisfaction of said company, they discounting interest for antici-pating payment." While it is quite possible that this provision was intended primarily for the protection and security of the company, with the view that they might be certain to secure any debts due to them before paying any losses, it is also an import-ant article in behalf of the insured. The company cannot be compelled to pay a loss until the premium note is paid ; and there may well be a reciprocal obligation, that the company shall not be permitted to demand payment of the note, until they have paid all losses. Equity requires that the parts of the obligation should, in all respects, be performed by the parties upon whom the duty is devolved, and will not allow either to exact its advan-tages, and leave its obligations unperformed. This doctrine is laid down in Holbrook *v.* Receivers of the American Fire Insurance Co. (6 Paige, 220), which I shall have occasion to examine here-after, and in Swords *v.* Blake (3 Ed. Ch. R. 112). So in Graham *v.* Russell (5 Maule & Sel. 498), it was held, that "An underwriter, in an action by the assignees of a bankrupt assured, upon

a loss which happened after the bankruptcy, may set off a sum due to him for premiums on the balance of accounts between the bankrupt and himself." The Court said that the case depended much upon the construction of 19th Geo. II., which provided that the assured, in any policy, should be admitted to prove his debt, as if the loss had happened before the commission issued, and shall receive dividend in like manner. " This statute," Lord Ellenborough says, " relates to the case of a bankrupt underwriter, and the case before the Court is that of a bankrupt assured. But the judges are of opinion that, as the set-off is to be allowed in the case of the bankrupt underwriter, by parity of reason there ought to be the same allowance on the part of the bankrupt assured. The question must, in effect, be the same as if the underwriter had become bankrupt, the assured being indebted to him and remaining solvent; and, therefore, it may be considered in that way."

Again, the authorities are uniform that, although the state of accounts between the parties is such that a set-off at law cannot be enforced, yet, if the demands each arose out of the same transaction, then a set-off will be allowed. Then, Judge Story says (2 Eq. J. § 1434): " As to connected accounts of debt and credit, it is certain, that both at law and in equity, and without any reference to the statutes, or the tribunal in which the cause was depending, the same general principle prevailed, that the balance of the accounts only was recoverable; which was, therefore, a virtual adjustment and set-off between the parties." In Reed *v.* The Bank of Newburgh (1 Paige, 215), the Chancellor held, that if the Defendant's demand " arises out of the same transaction as that of the Plaintiff, so that in equity the Plaintiff would have no right to recover against him, and the Defendant cannot avail himself of his defence at law, he will be relieved in Chancery." In that case, the relief demanded by the Complainant was in the nature of damages. The Complainant deposited with Defendant, as collateral security, certain bank stock when it was high; and the Defendants having violated a condition of their agreement, Complainant tendered the amount of the note and interest to

Defendant's cashier, and demanded a retransfer of his stock, which was refused. Subsequently the value of the stock depreciated, and Complainant sought to charge Defendant with the difference. (See Matter of Globe In. Co., 2 Ed. Ch. R. 625 ; opinion of Vice-Chancellor in Holbrook v. Receivers American In. Co., 6 Paige, 220.) The question, whether this is a case of "mutual credits," under § 36, 2 R. S., p. 47, has been elaborately argued by the respective counsel. I have already quoted the section at length, and will now examine the authorities of our own State in relation to it. The most direct and the most important case is that of Holbrook v. Receivers Am. In. Co. (6 Paige, 220). In that case Holbrook & Ferme, as partners, became insured in the American Insurance Company, for $8,000, for one year. Soon afterward Holbrook became the sole owner of the goods insured, and the policy was so modified as to apply to his new interest. In March, 1835, the policy was renewed for Holbrook's sole benefit, for one year, for $6,000. In December, 1835, the goods, exceeding in value the amount underwritten, were destroyed by fire, and by the same fire the company was rendered insolvent. Receivers were appointed to take charge of the assets of the company, under the statute passed in January, 1836. In January, 1833, Holbrook obtained of the company, on his bond and mortgage, the sum of $4,000, and Ferme joined in his bond as collateral security. In April, 1835, Holbrook borrowed of the Insurance Company a further sum of $4,000, for which he gave a bond and mortgage payable in one year. Soon after his loss Holbrook made due proof of the same, and applied for a certificate, under the act of 1836, and desired the receivers to adjust his claim, and allow the same to be offset against his bonds and mortgages. The act referred to (Laws 1826, p. 5, ch. 3, § 3) made it the duty of the receivers " as soon as they shall ascertain the amount of any claims against such corporation, to give certificates thereof," which were declared to be negotiable by endorsement. No objection was made by the receivers to the validity of Holbrook's claim, but they refused to adjust and certify, for the purpose of preventing him from offsetting the loss against

the amount due on his bonds and mortgages. The receivers brought a suit against Holbrook & Ferme, upon the first bond, for the payment of $4,000. Holbrook & Ferme, therefore, presented a petition to the Vice-Chancellor, praying for direction to the receiver to allow the set-off and to cancel the bonds and mortgages, upon receiving the amount due thereon, beyond the $6,000 underwritten on the policy. The Vice-Chancellor refused the petition on the ground that the amount payable under the policy was unliquidated, and held that Holbrook must pay his bonds and mortgages and take only his ratable portion of the effects of the company. Upon appeal to the Chancellor this decision was reversed. The Chancellor says, at p. 228 : " Independent, however, of the general provisions of the Revised Statutes relative to set-off, I think this was a case of mutual credits, which made it the duty of the receivers to allow the offset." He then cites and comments upon § 36, before quoted, and says : " The language of this section, in relation to set-off, in the case of trustees of an insolvent debtor, is the same as that of the English bankrupt act, which has been repeatedly held, not only to embrace mutual debts, but also all credits and transactions ex contractu, where the credit or contract must ultimately terminate in a debt, although the debt had not been liquidated or become due and payable at the time of the bankruptcy ; and it extends the right of set-off to every such debt or claim which the creditor of the bankrupt would have the right to prove, and receive a general dividend for, under the commission. . . . . Whether this case, therefore, be considered as coming under the general law of set-off, except for the improper and unconscientious refusal of the receivers to adjust the loss, as it was their duty to do, or as coming within the more extended principle of the Revised Statutes relative to the adjustment of cross demands between the trustees of insolvent debtors, and other persons, there cannot be any reasonable doubt that the amount of the last bond and mortgage, which was executed by the assured only, should be offset against the claim of Holbrook under the policy." The offset of the first bond and mortgage was refused, because it was made by Ferme as well as by Holbrook.

In this respect, the reasoning of the Vice-Chancellor in favor of allowing that bond and mortgage to be set-off, is more satisfactory to me than that of the Chancellor. In many respects, there is a striking similarity between Holbrook's case and the one now before us. In each case the loss was unliquidated, and in the same form, and to the same degree. In each case the loss occurred before or at the date of the bankruptcy. In each case the receivers held a certain liquidated claim against the insured, which matured at an earlier date than the claim against the company, and which they were proceeding to enforce. In one point there was a difference. In Holbrook's case the claim which he sought to offset arose out of a transaction entirely disconnected from that which the receivers sought to enforce against him. In the present case, the two claims form a part of the same transaction. So material is this point in favor of the Respondent, that the Vice-Chancellor, in Holbrook's case, said, at p. 222 : " Where the company held the bond and mortgage of the parties whose building upon the mortgaged premises the company had insured, and a loss to the whole amount of the sum insured was sustained by the destruction of the building, and where the loan of money upon the bond and mortgage, and the making of the insurance upon the building, were parts of the same transaction— in such case (a loss to the full amount insured being admitted) I consider the assured entitled to have the loss deducted or set off against the bond and mortgage debt, notwithstanding the securities have passed into the hands of receivers, and may be sued in their names." I have already cited some authorities sanctioning this view of the Vice-Chancellor. Holbrook's case is criticised by the Appellant's counsel, in that the Chancellor cites the case of Graham v. Russell (5 Maule & Sel. 498) as the authority for his position, while it is said that that case was decided under statute 19 Geo. II., ch. 32, the provisions of which are different from those of our statute. The criticism is, to some extent, just, as there was the difference stated in the language of the statute. The learned Chancellor was, however, quite correct in his proposition to which he cited the case as authority, that " The lan-

guage of this section, in relation to set-off in the case of trustees of an insolvent debtor, is the same as that of the English Bankrupt Act, which has been repeatedly held not only to embrace mutual debts, but also all credits and transactions ex contractu where the credit or contract must ultimately terminate in a debt, although the debt had not been liquidated, or become due and payable, at the time of the bankruptcy." Thus in Grove *v.* Dubois (1 Term R. 112), it was held that a broker with del credere commission might set off a loss upon a policy happening before bankruptcy, in an action by the assignees for premiums upon various policies underwritten, and for which he had debited the broker. In the opinion of Buller, J., at p. 115, the language of the statute 5 Geo. II., ch. 30, is given, thus : "Where it shall appear to the commissioners that there hath been mutual credit given by the bankrupt and any other person, or mutual debts," &c., "the commissioners shall state the account between them, and one debt may be set against another, and what shall appear to be due on either side, on the balance of such account, and no more, shall be claimed and paid on either side respectively." This language is the same, in substance, with that of our statute, already quoted. So in Bize *v.* Dickason (1 Term R. 285), the same rule was announced upon the same statute. In this case it appeared affirmatively that the loss was not adjusted until after the bankruptcy. It appeared further, that the broker had, in fact, paid his whole debt to the assignees, without deducting the loss mentioned, but being paid in mistake, or in ignorance of his rights, he was permitted to recover the same back from the assignees. So in Koster *v.* Eason (2 Maule & Sel. 112), upon the same statute, the same rule was laid down by Lord Ellenborough. The case of Holbrook I consider, therefore, as sustained by the authorities under the English statutes. It also commends itself to every man's sense of justice. Nothing could be more repugnant to natural equity, than that Holbrook should have been compelled to pay the receivers the sum of eight thousand dollars, while the company confessedly stood indebted to him in three-fourths of that amount. The balance only was the just indebtedness.

Jones *v.* Robinson (26 Barb. 310) was a case where Jones had a deposit of $924 in the Hollister Bank, standing subject to his draft, and the bank held his note for $391, not then due. This was held to be a case of mutual credits, and the receiver was directed to apply to the note a sufficient portion of the sum on deposit to cancel it. Berry *v.* Brett (6 Bosw. 627) was a similar case to the others cited, with this difference, that the loss had been adjusted before insolvency, and the note matured afterward. The decision was to the same effect as in Holbrook's case. In the matter of the receivers of the Globe Insurance Company (2 Ed. Ch. R. 625), money was borrowed from a fire insurance company in order to erect a building upon the mortgaged premises, and when erected it was insured by the same company to the mortgagors. A fire destroyed it, and at the same time rendered the insurance company insolvent. Held that the loss by fire might be set off against the bond and mortgage. After a careful examination, I can find no other important decisions in the courts of this State upon the statute law under consideration.

The cases I have referred to sustain the judgment below, and cannot be overthrown by analogous or general references. They settle conclusively the proposition, that a loss occurring before bankruptcy is a credit within the statute of mutual credits, although the loss be not adjusted till after the bankruptcy, and although no extended time of payment be formally asked or given.

I have quoted some of the English cases under the statute of bankruptcy, sustaining the views of the Chancellor in Holbrook's case (supra), and have examined the numerous cases cited by both parties from the English reports. I see no reason, however, to doubt the correctness of the Chancellor's decision.

I am of the opinion that this claim presented a case of mutual credits under the statute of this State.

Some minor points upon the statute are raised. I do not consider them essential, and, for the reasons given, am of the opinion that the judgment below should be affirmed.

All concurring, affirmed.                    JOEL TIFFANY,
                                        State Reporter.