Earl, J.
The defendant was dissolved and a receiver was appointed of its assets, under section 17 of the act, chapter 463 of the Laws of 1853. It was organized under the same act, and by section 11 of the act it was made subject to all the provisions of the Revised Statutes in relation to corporations, so far as the same were applicable, except as otherwise specially provided in the act. No provision was made in the act regulating the conduct of the receiver in such a case, or the distribution of the assets, or any of the proceedings subsequent to the appointment of the receiver. All of such matters were left to be regulated by the provisions of the Revised Statutes and the practice of courts of equity, and to those provisions and that practice we must look, so far as needful, for the solution of the questions presented for our consideration.
1. The supreme court, at special term, upon the application of the receiver, made an order for the publication of notices to creditors to exhibit their claims, as required by the Revised Statutes (2 R. S. 467, § 56), and the notice was duly published. The referee held, that claims not exhibited within the time mentioned in the notice were precluded from sharing in the assets, and this holding was confirmed at both the special term, and, as I understand its order, the general term. I entertain no doubt that this is right, for the reason stated in the opinion of the referee (Matter of Harmony F. & M. Ins. Co., 45 N. Y. 310).
2. It is claimed, upon the part of some of the holders of unmatured policies, that they are entitled to have refunded to them a pro rata portion of the premiums paid by them, before the payment, out of the assets, of any other creditors, and this claim is based upon the following provisions of the Revised Statutes *225 (2 R. S. 470, §75): “If there shall be any open and subsisting engagements or contracts of such corporation, which are in the nature of insurances or contingent engagements of any kind, the receiver may, with the consent of the party holding such engagements, cancel and discharge the same, by refunding to such party the premium or consideration paid thereon by such corporation, or so much thereof as shall be in the same proportion to the time which shall remain of any risk assumed by such engagement as the whole premium bore to the whole term of such risk, and upon such amount being paid by such receiver to the person holding or being the legal owner of such engagement, it shall be deemed canceled and discharged as against such receivers.” Section 77: “The receivers shall retain, out of the moneys in their hands, a sufficient amount to pay the sums which they are hereinbefore authorized to pay, for the purpose of canceling and discharging any open or subsisting engagements.”
This claim has been disallowed by the court below, and, we think, properly.
By the act of 1853, the corporations organized under it were made subject to such provisions of the Revised Statutes as were applicable, and the sections above cited are not applicable to life insurance companies. They can apply only to fire and marine or other insurances having a definite term to run. In the case of a running or unmatured life policy, the time which shall remain of the risk cannot be known. If these sections apply, then' the unjust result will follow that the more one has paid upon one of the policies, the less he will receive; and the one who has paid the least, and has the longest expectation of life, will receive the most. These sections are applicable only to cases where the insurance is an indemnity for some certain time against some risk ; and in such cases the amount paid for the indemnity may be apportioned. *226 If the risk has been carried half of the time, half of the premiúm has been earned, and the nearer the risk has been carried to the end of the time, the more of the premium has been earned ; the less valuable the policy has become to the assured, and under these sections, therefore, less would have to be refunded. But life insurance is not an indemnity against any risk, but an absolute engagement to pay a sum certain at the end of a definite or indefinite time. In such cases the policy becomes more valuable as its end is approached, and any such settlement as could be made under these sections would be quite absurd.
But the claim is made, on the part of some of the appellants, that the holders of unmatured policies are not creditors, but partners in the company, and that they are therefore not entitled to share in the assets until after payment of the death claims of other creditors. The argument that they are to be treated as partners is quite ingenious, but, I think, clearly unsound. The statute of 1853, to which this company owed its creation, made it a corporation. It had a capital stock of $110,000, divided into shares, which was contributed, not by policy-holders, but by the stockholders. Its business was managed by directors chosen by the stockholders. No policy-holder, unless a stockholder, had any voice in any way in the election of its officers or the management of its business. Every policy-holder in such company enters into engagements with the company, and not with any other policy-holder. He pays the premiums upon his policy, not to make a fund to insure others, but solely as a consideration of his own insurance. The company receives the money as its own,- and holds it as its own, and may do with it what it will, except as it is restrained by some statute. It is wholly immaterial to the assured what the company does with the money, provided it remains solvent until the maturity of his *227 policy. It is true that the company relies upon all the premiums paid to carry on its business, and that it could not discharge its obligations out of its capital alone. The law requires that it. shall keep and have, at all times, assets, invested in a certain way, sufficient to meet all its liabilities—that is, that it shall keep solvent. But they who pay their money for insurance are no more jointly interested, or in any sense partners, than the depositors in a bank. The depositors swell the assets of the bank and also its liabilities, and they have a common interest that the bank shall keep its funds so as to be able to discharge its liabilities, and that is all. It is true that when such a company insures one, it takes into account the fact that it- has insured and is to insure many others, and that fact has a bearing upon the amount of premiums charged, but the premium is, after all, solely for the particular insurance. The fund produced by the payment of all the premiums does not in any sense belong to the policyholders, but belongs exclusively to the company, and the policy-holders are interested in it in the same way only that the creditors of any other corporation are interested in its funds.
There is nothing in the statute of 1853 which makes the policy-holders members of the company. Section 10 of that act provides that the company may sue any of its “members or stockholders,” and that any of the “members or stockholders” may sue it. The words “members and stockholders” here mean the same person. Every member of such a company is a stockholder, and every stockholder a member. The provision is wholly unnecessary, and has no significance. It is a superfluous provision, frequently found in similar statutes.
There is a provision in the charter of this company that the stockholders may receive a semi-annual dividend of not exceeding three and one-half per cent., and *228 that, at intervals of three years, the net profits, after paying such dividends, shall be paid, twenty per cent, to the stockholders, and eighty per cent, to the policyholders. It is claimed that this sharing in the profits makes the policy-holders partners. These profits were not to be paid to them as the income of any business which they were carrying on or in which they were interested. They were the profits of the company in its business. The policy-holders could make no profits. They could never receive back more than they paid, and never as much, interest upon their payments being taken into account, and hence any dividend to them under this charter could in no proper sense be called, as to them, profits. As to the company, they might be profits earned by good management and too large pre-, miums, profits earned solely out of the stockholders. These so-called profits, when divided, would be simply an equitable adjustment of premiums paid. If such profits should exist, they would show that the company had been exacting more premiums than were just and fair, and the excess was to be refunded in this mode.
This novel claim of partnership is not sustained by any authority, and even in the case of a mutual life insurance company was repudiated by Judge Allen, in his opinion in Cohen v. New York Mutual Life Ins. Co. (50 N. Y. 610).
But the further claim is made that these policyholders, although not partners, are not creditors, and as such entitled to share in the assets of the company on a footing of equality with other creditors, and this claim must now be somewhat examined.
It is true that there is no provision in the policy that any portion of the premiums shall be refunded. There is an agreement on the part of the company that, upon the payment of the annual premiums, it will pay the stipulated amount at death.
*229 There is also the agreement necessarily implied that it will receive the annual premiums and carry the insurance to its term. The annual premium is not paid solely for an insurance for the year in which it is paid, but, as stated by Mr. Justice Bradley, in New York Life Ins. Co. v. Statham (93 U. S. 24), each premium is part consideration of the entire insurance for life ; or, as stated by Mr. Justice' Strong in the same case, the assured, by paying the first premium, obtains an insurance for one year, together with a right'to have the insurance continued from year to year, during his life, upon payment of the same annual premium, if paid in advance. Whichever of these be the true theory, the agreement is necessarily implied that the company will receive the premiums and keep the policy in life ; and this is not all. The company is the creature of statute, and its mode of acting for the protection of the policy-holders, is regulated by statute. From the nature of the case, the agreement must also be implied that it will obey the statute, the law of its creation and of its existence ; that it will do its business as required by the statute ; that it will properly keep and invest its funds, and be in a condition, at all times, as the statute requires, to discharge all its liabilities. Therefore, when it violates the law—fails to keep on hand funds required by law, and becomes insolvent, discontinues business, makes it impossible for the assured to pay premiums, and fails to carry the policies—it has broken its engagements with its policyholders, and becomes liable to them on account of such breach. The policy-holders then have a claim for damages, just as they would have if, while doing business, it had, without just cause, refused to receive the payment of premiums, and to continue the policies in life ; and to this effect have, I believe, uniformly been the decisions (New York Life Ins. Co. v. Statham, supra ; Fischer v. Hope Mut. Life Ins.. Co., 69 N. Y. *230 161; Bell’s case, L. R. 9 Eq. 706 ; Cook’s case, Id. 703; Holdich’s case, L. R. 14 Eq. 72).
These policy-holders are, therefore, in the same position as any other persons would be, who held running contracts of value with the company, which- it had broken—claimants for damages.
What is the damage sustained by each of these policy-holders ? Clearly the value of the policy which has been destroyed. When such value has been ascertained, the true measure of damage has been arrived at. But the difficulty is to determine the value. In any given case the precise value cannot be ascertained.
If the time of death were certain, and the rate of interest determined, there would be no difficulty. Then the present value of the amount to be paid at death, diminished by the amount of the present value of all the premiums to be paid, would give the value. But the time of death is uncertain, and hence the present value of a running policy must always be somewhat speculative and uncertain. Yet, as in all cases of difficulty, the courts charged with the duty of ascertaining value, must take the best light the nature of the case admits.
To persons of a certain age there is an average expectancy of life, and this is shown in certain tables used in the business of life insurance, showing the expectancy of life for persons of all ages.
These tables are built upon long and varied experience, and are deemed sufficiently reliable, in the absence of a better basis, for the guidance of the courts, of public officers and of insurers. One of such tables is annexed to the act, chapter 623 of the Laws of 1868, and that is the table used by the referee in this case. As before stated, the annual premiums are not consideration of assurance for the year in wffiich they are paid ; for they are equal in amount, whereas the risk in the early years of life is much less than in the later. *231 Therefore, during the early years the assured has paid more than sufficient to carry the risk during those years, and. this excess is to aid in carrying the risk during the later years, when the annual premiums would be insufficient for such years. This excess is called the equitable value of the policy, and goes to make up what is called the reserve fund. This reserve, together with the same annual premiums, ought to be sufficient to enable the assured to obtain a policy for the remainder of his life for the same amount in another solvent company, and hence may be taken as the measure of present value, assuming that there has been no change in the value of his life since his assurance, except that caused by the efflux of time. But the health of a policy-holder may, since his insurance, have become so impaired that his life is not now reinsurable, and hence, in his particular case, the value to be arrived at upon this basis would not be the measure of his damage. But yet I am inclined to think that even in such cases the basis would have to be generally adhered to, for the reasons stated by Lord Cairxs, in Lancaster’s case, to be found in a note to Holdich’s case, above cited, because it would be wholly impracticable, in the cases of thousands of policy-holders, to determine the state of health for reinsurance of each policy-holder, compared with his state of health at the date of his policy. The inquiry would be so much a matter of speculation and uncertainty, and would lead to so much litigation, delay and expense, that it would be practically impossible, it seems to me, to administer the assets of an insolvent company in that way. But what the general rule in such a case should be it is not important to determine now, as all these lives must be assumed to be in a normal state, as there is no proof as to the precise state of any pne. As I understand it, the referee in this case adopted the basis mentioned, with the aid of the table above referred to, in estimat *232 ing the value of the running policies at the date of the dissolution of the company ; and in this I cannot perceive, from any evidence in the case or any information furnished by the briefs of learned counsel, that any error was committed; and I therefore conclude that these policy-holders are creditors of the company for the present value of their policies as thus estimated.
3. The receiver holds a large amount of premium notes, given by policy-holders in part payment of premiums ; and the referee held that the amounts due upon such notes should be offset against the value of the policies, and that the dividend should be declared and paid upon the balance. In this there was no error. A policy-holder who has given such a note is a creditor only for the balance, after deducting such note from the amount due him for the value of his policy; and in holding that the dividend was to be made upon such balance, the referee has followed the rule laid down in the statutes and the decisions (2 R. S. 47, § 36 ; Id. 464, § 42, and Id. 469, § 68 ; Matter of Globe Ins. Co., 2 Edw. Ch. 625; Osgood v. De Groot, 36 N. Y. 348).
4. Our attention is called to the case of an unmatured paid-up policy, and the claim is made that it should be treated differently from unmatured policies upon which annual premiums are payable. But there can be no difference. The value of such a policy must be computed in the same way as the others. It is the balance of the premiums, ascertained by the rules used in such cases, necessary to’carry the policy to maturity, or, in other words, the unearned premium, which is called the reserve.
5. There are several annuitants of this company— persons to whom the company, for gross sums paid, agree to pay certain sums annually during life—and the referee held that these persons were entitled to receive the present values of their annuities, computed *233 upon the basis of the Northampton Tables, with interest at six per cent. It is claimed on behalf of some of the appellants that in this there was error. I. can perceive none. These are not cases of insurance, and they are not to be governed by any of the rules applicable to life insurance. They are cases simply where, for a gross sum paid, the company become' bound to pay certain sums annually during the lives of the annuitants. It has been the uniform rule of the courts in this State to use these tables to ascertain the present value, and to capitalize such annual payments (Schell v. Plumb, 55 N. Y. 592; Rule 76 of the Supreme Court).
6. The claim is made that the death claims which matured before the dissolution of the company should be paid before the claims of holders of unmatured policies ; and I think this claim was properly disallowed by the referee. Upon the assumption which we háve shown to be a proper one—that the holders of such policies are creditors of the company—this claim has no basis to rest on. No decision has ever been made, - that I can find, giving the preference claimed. The death claimants have no lien, legal or equitable, upon the funds of the company, and without such lien they can have no preference.
It is the rule of the statute, as well as of equity, that all the creditors of such a corporation, when it becomes insolvent, shall share in its assets in proportion to their claims (2 R. S. 47, § 36 ; Id. 466, § 48 ; Id. 471, § 79). The fact that one claim is matured gives it no preference over others not matured. There is nothing in the nature of life insurance that gives the preference. One who has paid his money to carry his policy to maturity has no better right or greater equity than another who has paid his money to carry a policy toward maturity.
The holder of a running policy has paid his money, not to make a fund to pay death claims, but for insur *234 anee upon his own life. He expects the benefit of the money he has paid, either by receiving the amount insured at the maturity of his policy, or damages for the breach, if the company fails to carry his policy . to maturity. To the extent of such damages he is on the same footing, legal and equitable, with every other creditor. The opinion of Chancellor Euuyoít in the case of Yannatta v. New Jersey Mut. Life Ins. Co., with a copy of which we have been furnished, is not in point, as that was a mutual company in the chapter of which the holders of running policies were liable to assessment to pay death losses.
7. This company was dissolved and a receiver appointed December- 14, 1876. Thomas J. Lockwood, holding a life policy upon which the premiums had been paid to March 27, 1877, died March 15. The appellant Gilliland was appointed his administrator, and served upon the receiver proof of his death, May 23, 1877—long before the expiration of the time under the published notice for the presentation of claims'. The referee allowed him only the reserve value of his policy at the date of the dissolution of the company, computed in the same way as the values of running policies were computed, disregarding entirely the fact of the subsequent death of the assured. In this I think he erred. The claimant was entitled to be allowed as his damages the value of this policy. There is no statute regulating how such value as between the receiver and the claimant shall be determined. The rules by which the referee determined the values of running policies will not in all cases do justice. In some cases they may give a claimant more damage than he has sustained, and in other cases less. In their general applications, however, they will work out results sufficiently accurate for judicial action. In general, they furnish the only practical basis of computation, and hence are' sanctioned. But these rules, *235 adopted from the necessity of the case, should not be used where, upon facts existing, the precise value of a policy may be easily ascertained. Their use is not then justified by any necessity or consideration of convenience. Here the whole premium had been paid, and at the time when the claim was presented, the precise value of the policy at the time of the dissolution could easily be shown. It was free from uncertainty or speculation. The amount insured was payable ninety days after the proofs of death, and the present value of that sum on the 14th day of December was the value of the policy, and that value could be ascertained like the present value of any certain sum of money payable at a definite future day. There can be no embarrassment in allowing the values of such policies to be computed in this way where the death occurs, and the proofs of death are furnished at any time before the • expiration of the time for presenting claims. This mode of computation is sustained by Bell’s case and Holdich’s case, above cited.
I have now considered all the allegations of error brought to our attention by the various appeals, and my conclusion is that the order appealed from should be affirmed, except as to the appellant Gilliland, and that as to him it should be modified to conform to the views above expressed.
Costs in this court must be allowed to the receiver and to the appellant Gilliland, to be paid out of the assets, but to none of the other parties.
All concurred, except Audrews, J., absent.