GEORGE S. VAN SCHAICK, Superintendent of Insurance of the State of New York, as Conservator of the Property and Assets of UNION INDEMNITY COMPANY Within the State of New York, Respondent, *v.* VINCENT ASTOR, Sometimes Known as WILLIAM VINCENT ASTOR, Appellant.*

Supreme Court, Appellate Term, First Department, February 1, 1935.

---

* Revg. 153 Misc. 377.

*Carter, Ledyard & Milburn* [*J. M. Richardson Lyeth* and *Frederick H. Van Houten* of counsel), for the appellant.

*Abraham J. Halprin,* for the respondent.

FRANKENTHALER, J. Plaintiff, Superintendent of Insurance of the State of New York, as conservator of the property and assets of the Union Indemnity Company, a foreign corporation, under order of the Supreme Court dated January 9, 1933, sues to recover insurance premiums on two policies issued by the company to the defendant. The answer sets up several defenses and counterclaims founded on demands against the company, and asks for judgment dismissing the complaint and for the sum of said counterclaims.

Plaintiff's motion for summary judgment was based on the ground that defendant was not entitled to offset the demands pleaded, and the motion was granted for the reason, as appears from the opinion of the court below, that under section 420 of the Insurance Law set-off is not permissible in this case.

That section, which is included in article XI of the Insurance Law, containing provisions pertaining to the rehabilitation, liquidation, conservation and dissolution of delinquent insurers, reads:

" Set-offs. 1. In all cases of mutual debts or mutual credits between the insurer and another person, such credits and debts shall be set off and the balance only shall be allowed or paid.

" 2. No set-off shall be allowed in favor of any such person, however, where (a) the obligation of the insurer to such person would not then entitle him to share as a claimant in the assets of such insurer, or (b) the obligation of the insurer to such person was purchased by or transferred to such person with a view of its being used as a set-off, or (c) the obligation of such person is to pay an assessment levied * * * upon a subscription to the capital stock of a stock corporation insurer."

The learned justice below decided that the set-offs in this instance were not debts or mutual credits within the meaning of the statute;

that they were merely obligations imposed by law to pay damages for breach of contract as distinguished from contractual obligations to pay a sum of money, and, therefore, not available to this defendant.

I think that such a construction of the statute is too narrow. Our former statute (2 R. S. 47, § 36) permitted the set-off of mutual debts and mutual credits, and it was held under the act that an unliquidated loss was a proper offset against a receiver. (*Osgood* v. *DeGroot*, 36 N. Y. 348, at p. 354, citing *Holbrook* v. *Receivers of the American Fire Insurance Co.*, 6 Paige, 220.)

In the *Osgood* case the court says (at p. 356) that the cases referred to in the court's opinion " settle conclusively the proposition, that a loss occurring before bankruptcy, is a credit within the statute of mutual credits, although the loss be not adjusted until after the bankruptcy, and although no extended time of payment be formally asked or given." The result is not inequitable, for " the equity of equality among creditors is either found inapplicable to such set-offs or yields to their superior equity." (*Scott* v. *Armstrong*, 146 U. S. 499.)

In allowing the right to set-off in *New York Title & Mortgage Co.* v. *Irving Trust Co.* (241 App. Div. 246) the court says (p. 248): " We think that section 420 was passed to express the legislative intention that the old rule should still be followed."

But even under the restricted construction adopted below the first, or Connett, counterclaim seems a proper set-off. Connett, defendant's employee, died as a result of injuries received in his employment September 30, 1925; the Compensation Commission handed down an award and the company made periodical payments under that award for over seven years prior to the conservation order. So that the liability being defined and admitted the amount thereof was determinable by the terms of the contract on the date of the conservation order. (Workmen's Comp. Law, § 27; *People* v. *Commercial Alliance L. Ins. Co.*, 154 N. Y. 95, 99; *Brotherhood of Locomotive Firemen & Engineers* v. *Pinkston*, 293 U. S. 96.)

In the second, third and fourth set-offs it is alleged that the company issued its policy to indemnify the defendant against liability for accidental injuries and to defend at its own expense any law suits begun to enforce such liability; that prior to the conservation order suits were brought in such cases, and that subsequent to the said order defendant breached the contract to defend those suits, to the damage of defendant. The fifth set-off is a workmen's compensation case wherein the award was paid by the company, but after the date of the conservation order defendant was required to pay further sums by the Commission.

In *Matter of Empire State Surety Co.* (214 N. Y. 553, at p. 565) the court says: " When an accident against the consequences of which the assured is insured has happened and suit has been commenced against the assured, the insurer, under the terms of the policy, incurred the obligation of assuming the defense of such suit. When the insurer violated the contract and refused to defend the suit or went into liquidation, thus making it impossible for it to undertake the defense of such suit, it incurred a liability which was not contingent. Where the insurer has failed to perform its contract and the accident against the consequences of which the assured is insured has happened, the liability of the insurer is certain. In such a case the liability ceased to be contingent although the amount of the liability may have been unliquidated. The insurer having failed to perform its obligation, the amount of the liability would not become fixed until the loss which the assured sustained was determined, but the liability of the insurer would be certain and not contingent from the moment that it failed to perform its obligation to defend the suit brought against the assured. It follows that when the order of liquidation was entered, the claims of all of the respondents had so far ripened and matured that they constituted certain and fixed liabilities of that company." The distinction is thus manifest between *Van Schaick* v. *Pennsylvania Exchange Bank* (236 App. Div. 453), relied upon by respondent, and the case now under consideration.

The second, third and fourth set-offs seem to be sustained by the rule above stated.

The sole ground of the appointment of the Superintendent as conservator in this instance is that the company is a foreign insurer and has been placed in the hands of receivers in the State of Louisiana, its domiciliary State; there is no adjudication of insolvency, and there appears to have been no date established when the rights and liabilities of the parties would become fixed, except that the Louisiana court fixed September 30, 1933, over eight months after the date of the conservation order, as the last day for filing claims.

Judgment and order reversed, with costs, and motion denied, with ten dollars costs.

All concur; present, LYDON, HAMMER and FRANKENTHALER, JJ.