BAYONNE DISTRICT COURT.

VERA DEMOCRAZIA SOCIETY, A CORPORATION, PLAINTIFF, v. BANKERS NATIONAL LIFE INSURANCE COMPANY, A CORPORTION, DEFENDANT.

For the plaintiff, *Insley, Vreeland & Decker.*

For the defendant, *John L. Ridley.*

MELNIKER, J. The plaintiff in this case is a mutual benefit society paying health and death benefits to its members. Upon the death of any member, the society pays $500 to the next of kin of the deceased member. To protect itself against this liability, it entered into a contract of reinsurance with the defendant, Bankers National Life Insurance Company, covering forty-six members of the society who were in good standing.

A member named Comes having died and the defendant having refused to pay the sum of $500, this suit was instituted.

The insurance company defends on the ground that under the contract of reinsurance, the society bound itself to make careful selection of its members from a physical and moral standpoint, and agreed not to accept for death benefit membership any person whose physical condition was such as to probably impair his likelihood of living, and furthermore, in the application for the reinsurance, the plaintiff represented that the members covered by the reinsurance were all in good standing and in good health at the time the application was made to the best of the plaintiff's knowledge and belief;

that all such members were working on full time and none were absent temporarily on account of illness or injury; and that as a matter of fact, the decedent was not in good health at the time of the application and was known so to be by the officers of the plaintiff society.

The contract of reinsurance also provided, paragraph VI-B:

"The association shall furnish to the reinsurance company copies of all medical examinations, mercantile reports, inspection reports and all other information which it may have bearing upon the subject of the insurability of each and every benefit member admitted to membership."

Defendant contended that at the time the application was made, August 29th, 1930, the decedent Comes was suffering from pulmonary tuberculosis, and that his condition was known to the officers of the plaintiff society, and that the concealment of this fact from the defendant rendered the contract void in so far as the liability of the defendant to pay in this particular instance is concerned. The defendant also raises a question as to whether or not the decedent was working at the time the application was made, but this contention can be dismissed without further discussion, as the burden of proving that the decedent was not working was on the defendant and the proof on that point offered by the defendant was altogether insufficient to establish the fact. The fact that Comes quit the employment of Colgate & Company on August 25th, raises no presumption that he was not working at all on August 29th. At most, it raised a presumption that he was not working for Colgate & Company on August 29th.

The matter of the concealment of the condition of the decedent's health, however, raises a more difficult question. This contract, as heretofore stated, was not a contract of insurance but a contract of reinsurance. There is a well defined distinction which has been recognized by the courts. A contract of reinsurance is really not a contract of insurance as much as it is a contract of indemnity. The same rules of construction do not apply. Certainly there is no reason for applying the rules regarding forfeitures to a reinsurance

contract, nor the rule that insurance policies should be construed most strictly against the insurance company. This distinction is well pointed out by Mr. Justice Peckham in the case of *Sun Mutual Insurance Co.* v. *Ocean Insurance Co.*, 107 *U. S.* 485, in which it was held that where the fact that a master of a vessel was over-insured was known to the insurer, and was not communicated to the reinsurer, the knowledge of such circumstance being material and important to the underwriter as likely to influence his judgment in accepting the risk, would relieve the reinsurer from liability. The court further said that in respect to the duty of disclosing all material facts, the case of reinsurance did not differ from that of an original insurance, and that the exaction of information in some instances might be greater in a case of reinsurance than as between the parties to an original insurance. In the former, the party seeking to shift the risk he has taken, was bound to communicate his knowledge of the character of the original insurance where such information would be likely to influence the judgment of an underwriter, while in the latter, the party was not bound nor could it be expected that he would speak evil of himself.

This principle is also affirmed in the case of *Bowery Fire Insurance Co.* v. *New York Fire Insurance Co.*, 17 *Wend.* 359, in which a reinsurer was held not liable because of failure of the insurer to communicate to the former facts within his knowledge concerning the character of the original insured. The court said that if the original insured had applied to the reinsurer for insurance, he was not bound nor could it be expected that he would speak evil of himself, but where the insurer applied for reinsurance, it was his duty to disclose any information he had which might influence the reinsurer in taking the risk.

The reasoning of these cases would seem to apply with peculiar force to the case under consideration. There is no question in this case but that the decedent was suffering from pulmonary tuberculosis at the time the application for reinsurance was made, and had been suffering from that disease for six or seven years prior thereto. It was also conceded

that the treasurer of the plaintiff society knew that the deceased had been confined to a tuberculosis sanitarium at Glen Gardner in 1922 and 1923. It is true that the application provides that the members were in good health "to the best of the applicant's knowlelge and belief," but does this require proof positive of knowledge absolute on the part of the applicant that the decedent was not in good health at the time the application was made in order to avoid the contract? I think not. I do not think it is sufficient for the plaintiff merely to show that it had no positive knowledge of the decedent's ill health.

The representation or warranty that the decedent was in good health to the best of the applicant's knowledge and belief, required honest belief, not a mere pretense of belief. It required real knowledge, not a pretense of knowledge. It implies that the person making such an affirmation has information upon which his knowledge is based. It requires the utmost good faith, and that the knowledge and belief be *bona fide*. An indifference to or disregard of information does not furnish a proper basis for such a statement. It must be a conclusion or conviction based upon knowledge or consideration of the facts and information that the applicant has or possesses or is readily available to him. This is peculiarly applicable to a case such as the one under consideration. The defendant company made no independent investigation of its own or physical examination of the members of the plaintiff society. The defendant relied upon the good faith of the plaintiff, and the contract required the utmost good faith on the part of the plaintiff, and where the plaintiff, as in this case, knew that one of its members had been a sufferer from pulmonary tuberculosis at one time, the least the defendant could expect from the plaintiff was that the plaintiff make inquiry of this member as to the present state of his health before including him in a list of those who were to be covered by the defendant's contract of reinsurance, and in fact, article VI-B of the contract provides that the society should furnish to the defendant company "all other information which it may have bearing upon the subject of the in-

surability of each and every benefit member admitted to membership."

It cannot be said that the plaintiff society in this case furnished the defendant with all the information which it had bearing upon the question of the insurability of Comes. If the nature of their contract called for the utmost good faith on the part of the plaintiff society, that obligation required the plaintiff to have disclosed to the defendant all the information it had regarding the state of Comes' healh.

Mr. Justice Story, speaking for the Supreme Court of the United States, in the case of *McLanahan* v. *Universal Insurance Co.,* 1 *Pet.* 172, said:

"A contract of insurance has been said to be a contract *uberrimoe fidei,* and the principles which govern it are those of an enlightened moral policy. The underwriter must be presumed to act upon the belief that the party procuring insurance is not at the time in possession of any facts material to the risk which he does not disclose and that no known loss has occurred, which by reasonable diligence might have been communicated to him."

And Lord Mansfield said in the case of *Pawson* v. *Watson,. Cowp.* 785, that—

"In a representation to induce a party to make a contract,. it is equally false for a man to affirm that of which he knows nothing as to affirm that to be true which he knows to be false." See, also, *Stipchich* v. *Metropolitan Life Insurance Co.,* 277 *U. S.* 311.

The plaintiff society did not discharge the full measure of its duty to the defendant by saying at the time it made the application that Comes was in good health to the best of its knowledge and belief, when it knew that he had been suffering from a serious illness and even casual inquiry would have disclosed that he was still suffering from it. Its statement that Comes was in good health to the best of its knowledge and belief was intended by the company to be more than an idle phrase. It should have made a full disclosure or have made some inquiry. To hold otherwise would open wide the door to fraud. This might work a hardship on the plaintiff,.

but it would be an even greater hardship on the defendant to hold otherwise. The hardship must fall somewhere and as between the two, the insistent voice of justice demands that it fall upon him who created this situation and who might have avoided it by the exercise of a little care and a modicum of good faith.

It was not necessary in order to avoid its liability with respect to the death of Comes that the defendant tender to plaintiff the entire premium. It is sufficient that it tendered a proportionate part of the premium, for the simple reason that the defendant company had carried the liability of the insurance of the other forty-five members of the society, who were covered by this contract, during the entire period mentioned therein. In other words, the defendant company was subjected to a liability of $500 for each one of the other forty-five members if death occurred during the year. To compel the defendant company to return the entire premium under such circumstances would be manifestly unjust and not warranted either by reason or authority.

There will, therefore, be judgment for the defendant.