LOUISIANA INSURANCE GUARANTY ASSOCIATION

v.

Dayton WATKINS, In His Capacity as Acting Administrator of the Small Business Administration and Small Business Administration.

Civ. A. No. 93–1385.

United States District Court, E.D. Louisiana.

Jan. 31, 1994.

---

Jay Hirsch Kern, Denise C. Puente, Alfred R. Gould, Jr., Simon, Peragine, Smith & Redfearn, New Orleans, LA, for plaintiff.

Paul Arrington, Eneid A. Francis, U.S. Attorney's Office, New Orleans, LA, Cheri Cannon Wolf, Small Business Admin., Office of SBIC Litigation, Washington, DC, for defendants.

### ORDER AND REASONS

CLEMENT, District Judge.

Plaintiff, the Louisiana Insurance Guaranty Association ("LIGA"), and defendants, Dayton Watkins, in his capacity as acting administrator of the Small Business Administration, and the Small Business Administration (collectively "SBA" or "Small Business Administration") have filed cross motions for summary judgment. For the reasons set forth below, defendants' motion for summary judgment is DENIED and plaintiff's motion for summary judgment is GRANTED.

## I. BACKGROUND

This case arises out of the construction of a D.H. Holmes store in the Hammond Square Shopping Center, located in Hammond, Louisiana. Hammond Square, A Joint Venture ("Hammond Square") entered into a contract with Lionel J. Favret Construction Company, Inc. ("Favret"), the general contractor, for the construction of the Hammond Square Shopping Center. In 1976, L & B Sheetmetal Company, Inc. ("L & B") entered into a subcontract with Favret to install a heating, ventilation, and air conditioning system in the Holmes store. The subcontract required L & B to furnish a performance bond. L & B obtained the bond from American Fidelity Fire Insurance Company ("American Fidelity"). Favret was named as the obligee of the bond, which was guaranteed by the SBA.[1]

After the work was completed, problems developed with the HVAC system. In April 1982, Hammond Square filed suit against Favret for breach of the construction contract. In turn, Favret filed a third-party demand against L & B and American Fidelity for indemnification.

Subsequently, American Fidelity was declared insolvent and placed in liquidation.

---

1. The SBA agreed to reimburse American Fidelity ninety percent of any losses incurred and expenses paid. Although both parties call the SBA's agreement with American Fidelity a guarantee, it is a contract of indemnity. Rather than agreeing to be held secondarily liable, as surety, for either American Fidelity or L & B, the SBA agreed to reimburse, or indemnify, American Fidelity for any loss that it actually incurred. La. Civ.Code art. 3035 ("Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."); *Cities Serv.* *Co. v. Lee-Vac, Ltd.*, 761 F.2d 238, 240 (holding that "[i]ndemnity is a shifting of responsibility from the shoulders of one person to another...."). A third party, the creditor, may sue to enforce a contract of suretyship. La.Civ.Code art. 3045. In contrast, the creditor generally does not have an independent cause of action on a contract of indemnity. *Vuljan v. Board of Comm'rs*, 170 So.2d 910, 913 (La.Ct.App. 4th Cir.1965) (holding that "an agreement of indemnification ... was distinguishable from a contract of suretyship ... and did not create a cause of action in plaintiff, a third person, to sue").

As a result of its being placed in liquidation, American Fidelity was dismissed from the aforementioned lawsuit in early 1988. After American Fidelity was declared insolvent and dismissed from the lawsuit, a third-party demand was filed against the LIGA, pursuant to La.Rev.Stat. § 22:1382(1)(b). The LIGA assumed all the rights, duties, and obligations of American Fidelity relative to the performance bond. On July 28, 1989, the LIGA paid $73,000.00 in settlement of the third-party claim. The LIGA also paid $32,-076.55 in legal fees and costs and $8,052.62 in expert fees.[2] On March 30, 1990, the LIGA's counsel wrote the SBA informing it of the payment and requesting payment.

The SBA refused payment to the LIGA, contending that the guarantee agreement was an asset of the New York State Department of Insurance, as liquidator for American Fidelity. To date, the liquidator has not made any claim for payment under the bond. Furthermore, the SBA has not made any payment to the LIGA. The LIGA, thus, contends that it is entitled to proceed directly against the SBA.

Both the LIGA and the SBA have filed motions for summary judgment. The LIGA claims that it stands in the shoes of American Fidelity, as statutory successor, or the New York State Department of Insurance, as subrogee, and is entitled to the proceeds of the SBA guarantee. The Small Business Administration, on the other hand, contends that the LIGA did not succeed to American Fidelity's rights. Instead the SBA avers that the LIGA is merely a creditor in the New York liquidation proceedings. It is the New York State Department of Insurance, as liquidator for American Fidelity, who, in SBA's opinion, should receive the proceeds of the guarantee.

## II. ANALYSIS

This case is ripe for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.) ("Summary judgment is proper if the movant demonstrates that there is an ab-

sence of genuine issues of material fact."), cert. denied, 113 S.Ct. 82 (1992). The parties agree that there is no genuine issue of material fact outstanding that would preclude summary judgment. Now, via cross motions for summary judgment, they ask the Court to determine, based on the undisputed facts, who is entitled to judgment as a matter of law.

### A. AMERICAN FIDELITY'S STATUTORY SUCCESSOR

■ Section 1382 of the Louisiana Insurance Code provides that the LIGA shall "[b]e deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." La.Rev. Stat. § 22:1382(b). There is no question that American Fidelity is an insolvent insurer within the meaning of section 1382 and that Hammond Square's claim is considered a "covered claim." La.Rev.Stat. § 22:1379(3)–(4). Accordingly, the LIGA contends that it has all the rights, duties, and obligations of American Fidelity with respect to the Hammond Square claim. In contrast, the SBA argues that the New York State Department of Insurance is the statutory successor to American Fidelity; relying principally on the Uniform Insurers Liquidation Law, La.Rev. Stat. §§ 757–63.

In addition to pointing to provisions of the uniform law, the SBA provides an exhausting discussion of the purposes served by a guarantee association versus a liquidator. Guaranty associations, like the LIGA, are created by states:

to provide insolvency insurance for insurance companies. Their role is somewhat analogous to that of the Federal Deposit Insurance Corporation in the banking industry. While the rules of the various associations vary, generally they are authorized by state statute and funded by the

---

**2.** LIGA has presented the Court with the affidavit of Ronald James, a senior claims examiner for LIGA, to support the amounts that it claims were paid under the performance bond. The SBA has not presented any summary judgment evidence to rebut LIGA's claim that it paid a total of

$113,129.17. In the absence of such summary judgment evidence the Court must take these amounts as undisputed. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 113 S.Ct. 82 (1992).

insurance companies doing business in that state. The guaranty associations assume the obligations of an insolvent insurance company, generally providing defense and indemnification for policyholders.... The function of the guaranty association is to protect the insureds in the extraordinary event of insurance company insolvency. *Excess and Casualty Reinsurance Ass'n v. Insurance Commissioner,* 656 F.2d 491, 492–93 (9th Cir.1981). These associations are not created to obviate the necessity of placing an insurer into liquidation. Rather, guaranty associations function as complements to liquidation proceedings.[3]

While guaranty associations are created to pay claims and assume the insolvent insurers role relative to those, the state insurance commission or department serves as receiver or liquidator and is charged with distributing the remaining assets of the defunct insurer. *Id.* at 493 ("Thus while a guaranty association guarantees payment only to policyholders, the [liquidator] liquidates the assets of the insolvent insurance company and distributes funds to all creditors....").

In the SBA's view, the LIGA is merely another creditor of American Fidelity, who should seek reimbursement in the liquidation proceeding. Clearly, in the absence of the SBA guarantee the LIGA would have to proceed as a normal creditor in the liquidation proceeding. The SBA's argument with respect to the distinct missions of guaranty associations versus liquidators, however, begs the question presented by this case: who is the statutory successor to American Fidelity's right to indemnification under the SBA guarantee? If the LIGA is the statutory successor to that guarantee it is entitled to recover from the SBA.

Guaranty associations in other states have relied on statutes similar to section 1382 in vain attempts to be held the statutory successor of defunct insurers. The SBA contends that the Uniform Insurers Liquidation Law compels this Court to reach the same decision. La.Rev.Stat. §§ 22:757–63. Under the Uniform Law, the liquidator is vested, by operation of law, with title to all of the defunct insurers assets. La.Rev.Stat. § 22:758; *Miner v. Punch,* 838 F.2d 1407, 1410 (5th Cir.1988). Based on a reading of the plain language of the two statutes, they appear to be in conflict.

Courts in states other than Louisiana have resolved this apparent conflict in favor of the liquidator. In *Skandia America Reinsurance Corp. v. Schenck,* 441 F.Supp. 715 (S.D.N.Y.1977), a reinsurer brought an interpleader action against the New York State Superintendent of Insurance and the New Jersey Property–Liability Insurance Guaranty Association. Both the liquidator and the guaranty association claimed to be the statutory successor of the defunct insurer and, thus, entitled to the proceeds of the reinsurance agreement.

The *Skandia* court, first looked to the standard insolvency clause contained in the disputed reinsurance contracts. This clause provides that in the event that the insurer becomes insolvent all payments by the reinsurer will be made to the liquidator, receiver, or statutory successor. *Id.* at 725. The court held that a New York court would find that the Superintendent, as liquidator for the defunct insurer, was entitled, by virtue of the insolvency clause, to recover the proceeds.

The court also looked to New Jersey law to support its holding. According to the court, the New Jersey counterpart to section 1382 did not vest the guaranty association with the right to recover on the insolvent insurers reinsurance agreements. *Id.* Rather, the court found that the New Jersey statute served only to limit the guaranty association's obligations. *Id.*

The Court does not find *Skandia,* or the other cases that follow its holding, to be persuasive. First, this case involves a contract of indemnification, the "guarantee," and

---

**3.** LIGA was created to:

provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the costs of such protection among insurers.

La.Rev.Stat. § 22:1376.

not reinsurance. Second, whereas the court in *Skandia* principally relied on the aforementioned insolvency clauses, the contract before this Court contains no such clause. In the absence of such a contractual provision, *Skandia* loses much of its force. Such insolvency clauses are mandated in the reinsurance context because the reinsurer would not be obligated to pay without such contractual language. A reinsurer is only obligated to pay if there has been a loss. In other words the reinsurance is triggered when a covered claim is paid. When an insurer becomes insolvent, it cannot pay the covered claim. Further, a liquidator may not pay the claim until it has recovered the reinsurance proceeds. Under such circumstances the reinsurer never becomes obligated to pay the liquidator or the insured. *Id.* In an attempt to ameliorate this intolerable circumstance, many states enacted statutes requiring reinsurance agreements to contain insolvency clauses. *Id.* In addition to not being presented with an insolvency clause, the SBA's obligation was triggered when LIGA paid the claim.

Finally, section 1382, which the LIGA relies upon, has not been interpreted in a manner consistent with the *Skandia* court's interpretation of the New Jersey statute. The New Jersey statute was held not to be an affirmative grant of rights to the guaranty association. The Louisiana statute, section 1382, has not been so interpreted. In *Louisiana Insurance Guaranty Association v. State of Louisiana Worker's Compensation Second Injury Board,* 552 So.2d 805, 807 (La.Ct.App. 1st Cir.1989), *writ denied,* 558 So.2d 1127 (1990), the court was presented with the question of what rights, if any, were vested in the LIGA, by virtue of section 1382. The Court found that the LIGA not only acquired the obligations of the defunct insurer but also its *"rights* on the covered claim." *Id.* at 807. There is no reason to believe that the Louisiana courts would not hold similarly were they confronted with the issues before the Court today.

## B. SUBROGATION

■ The LIGA also argues that if the New York liquidator is the statutory successor to American Fidelity, then it is subrogated to the liquidator's rights. The LIGA bases its subrogation argument on the fact that it paid Hammond Square's claim against American Fidelity. It is undisputed that the LIGA paid the claim. There is also no question that if the LIGA's motion is denied it will be a creditor in the liquidation proceedings. Nonetheless, the LIGA's position regarding subrogation is incorrect.

"Subrogation is the substitution of one person to the rights of another." La.Civ.Code art. 1825. When one person performs another's obligation, "that obligation subsists in favor of the person who performed it who may avail himself of the action and security of the original obligee against the obligor, but it is extinguished for original obligee." La.Civ.Code art. 1826.

The LIGA's contention that it is subrogated to the liquidator's rights is premised on article 1829 of the Louisiana Civil Code, which provides that "[s]ubrogation takes place by operation of law: . . . in favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment." La.Civ.Code art. 1829. The LIGA contends that it paid a debt that it owed with the New York Superintendent of Insurance and that as a creditor it would have recourse against the liquidator. The LIGA is correct that it may seek reimbursement from the liquidator.

■ However, the LIGA is not subrogated to the liquidator's rights. The LIGA paid American Fidelity's debt to Hammond Square. Assuming *arguendo* that the New York State Department of Insurance also owed this debt,[4] the LIGA would not succeed to the liquidator's rights. When a person performs the obligation of another, that person becomes subrogated to the rights of the obligee not the obligor. *See* La.Civ.Code art. 1826; *Excess and Casualty Reinsurance Ass'n,* 656 F.2d at 495 ("Subrogation entitles one who pays the debt of another to claim

---

4. The Court declines to address the question of whether the New York receiver was a co-obligor.

As stated below, the LIGA would not be subrogated to the liquidator's rights in any event.

the rights of the creditor so paid."); *see also* Saul Litvinoff, Subrogation, 50 *La.L.Rev.* 1143, 1146 (1990) ("transfer to a third person of the right and action of an obligee is effected through subrogation"). Thus, the LIGA became subrogated to Hammond Square's rights when it paid the claim. The LIGA has the same rights and the same remedies that Hammond square would have had against American Fidelity and, by virtue of the liquidation proceedings, the New York liquidator. The LIGA stands in the shoes, via subrogation, of Hammond Square and not American Fidelity nor the New York State Department of Insurance.

### C. ASSIGNMENT

In response to this Court's concerns regarding whether this action could proceed in the liquidator's absence, LIGA has obtained an assignment of rights from the Superintendent of Insurance of the State of New York. The Superintendent, as liquidator for the defunct insurer, "assign[ed] to LIGA all his rights under the Guarantee." As the Court has determined that the LIGA is the statutory successor of American Fidelity, it need not address the question of what rights, if any, the Superintendent assigned LIGA.

■ The SBA has responded to that assignment with arguments the Court finds troubling. First, the SBA contends that the assignment is not complete because the Superintendent retained the right of set off. The SBA has not provided the Court with any authority for the proposition that these set off rights render the assignment ineffective. The Court views the retention of those rights to be immaterial to the question of whether the LIGA is now the holder of the Superintendent's rights under the guarantee. The SBA's argument to the contrary is without merit.

■ The SBA also contends that even if the assignment is effective, it is not required to pay the full amount owed under the Guaranty agreement. Rather, in the SBA's view LIGA is only entitled to recover under the Guarantee the amount that the liquidator would be obligated to pay LIGA. In essence, the SBA contends that it is entitled to a windfall because of American Fidelity's insol-

vency. That result would be both unjust and without support in law. The SBA's obligation arose when the covered claim was paid. In contrast to the pre-insolvency clause reinsurance cases, the claim was paid and a loss incurred as a result. The SBA was, thus, obligated to perform pursuant to its guarantee. Assuming *arguendo* that the liquidator was the successor to American Fidelity, the SBA would still be required to perform to the full extent of its guarantee because a loss was incurred when the LIGA paid the claim.

### III. CONCLUSION

Pursuant to La.Rev.Stat. § 22:1382, the Louisiana Insurance Guaranty Association is the statutory successor to the rights of American Fidelity Fire Insurance Company under the Small Business Administration guarantee. Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED and that defendant's motion for summary judgment is DENIED.